J-A11029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHERRY ZHANG F/K/A SHAOBING ZHANG | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 723 MDA 2018 |
| JIANBIN CHEN | : | |

Appeal from the Judgment Entered April 4, 2018
In the Court of Common Pleas of Centre County Civil Division at No(s):
2015-0176

| | | |
|---|---|---|
| SHERRY ZHANG F/K/A SHAOBING ZHANG | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JIANBIN CHEN | : | |
| | : | No. 770 MDA 2018 |
| Appellant | : | |

Appeal from the Judgment Entered April 4, 2018
In the Court of Common Pleas of Centre County Civil Division at No(s):
2015-0176

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.:                     **FILED SEPTEMBER 26, 2019**

Appellant, Sherry Zhang (hereinafter "Zhang"), appeals from the judgment entered on April 4, 2018, as it relates to the denial of her breach of contract and fraud claims, as well as the trial court's refusal to issue a declaratory judgment in her favor.  Cross-Appellant, Jianbin Chen (hereinafter "Chen"), appeals from the judgment insofar as the trial court ordered

dissolution of the business. We affirm the verdict in its entirety, however, as the trial court failed to provide guidance for the appropriate dissolution of the business, we are constrained to remand with instructions.

We summarize the factual background of the case as follows. On December 22, 2011, the parties formed a corporate entity known as Icy Snow KTV, Inc. (hereinafter "Icy Snow" or "the business") by filing articles of incorporation with the Secretary of State. The parties did not follow corporate formalities such as the issuance of stock in the corporation, creation of bylaws, establishment of a board of directors, or holding meetings. Notwithstanding the fact that Icy Snow was formed by the filing of articles of incorporation, on February 28, 2012, Zhang and Chen executed a single-page "partnership" agreement (the "Agreement"), which the parties agree is the governing document for the business. Chen does not read or speak English well, so Zhang wrote the Agreement in English and then read it to Chen in Chinese. The Agreement provided that, "[t]he partners voluntarily associate themselves together as general partners for the purpose of conducting the general business of [a] Chinese karaoke bar." Agreement at paragraph 1. The Agreement also included the following relevant provisions.

> Contribution: [Chen] will contribute 60% of capital contribution. [Zhang] will contribute 40% of capital contribution.

> Profit and loss (includ[ing] cost): The partners will share profit and loss according to contribution proportion.

Management: [Chen] will be the president of [Icy Snow]. He will be [the] major person [responsible for managing] the company. [Zhang] will reserve the right to manage the company.

…

Withdraw/Death of partner: In the event a partner withdraws or retires from the partnership for any reason, including death, the remaining partner has the first priority to buy the [departed partner's] share in the partnership according to the fair market value.

Agreement, 2/28/2012, at paragraphs 4, 5, 6, and 8.

In January 2012, the parties began renovating the property that housed the business. The parties made capital contributions during this renovation period on an as-needed basis. The business opened in April of 2013. Neither party contributed money after the business opened. Throughout the first year of operation, Chen managed the business on his own and met with Zhang monthly to review income for the month and divide profits. Zhang became unhappy with Chen's management of the business and in August of 2014, the parties agreed to a new management structure. Under the new arrangement, Chen managed the business for six days, Zhang managed the business for four days, and each party retained the income from his or her respective management days and collected a $100.00 per day management salary.

On January 12, 2015, Zhang instituted this action by filing a complaint in the Court of Common Pleas of Centre County. Zhang alleged that she contributed more to the business than Chen. She sought an accounting and a declaratory judgment stating that she owned 51.13% of the business. The trial court ordered the parties to perform an accounting of the business. The parties were unable to agree on one accountant to perform the accounting, so

the court instructed each party to hire his or her own bilingual accountant, and work together to determine the amount of capital that each party contributed to the business.

Zhang's accountant, Mr. Yichen Wei, concluded that Zhang contributed $146,585.82 and Chen contributed $135,662.38, making their respective ownership interests 51.94% and 48.06%. In contrast, Chen's accountant, Mr. Raymond Zhang, concluded that Zhang contributed $136,554.24 and Chen contributed $213,645.65, making their respective ownership interests 38.99% and 61.01%. Mr. Wei's report[1] discounted Chen's capital contributions in two ways. First, he considered $47,203.34 in labor costs, including food and housing for the workers, to be unverified. Second, he considered $19,780.03, which represented Chen's service contributions, to be irrelevant.

---

[1] Chen contends that Zhang herself wrote the accountant's report on which she relies. In his brief, Chen alleges that on August 4, 2016, he served Zhang with requests for admission which asked for her to confirm that, "[Zhang] drafted some or all of the 'Accountant's report for [Icy Snow.]'" Chen's Brief at 16. Chen alleges that Zhang never responded to these requests for admission, thereby they were deemed admitted. Chen introduced the requests for admission at trial, whereupon counsel for Chen asked Zhang whether she responded to the requests. Zhang indicated that she had and that her attorney would be able to provide documentation to that effect. It does not appear that Zhang introduced a response to these requests for admission at any point. Thus, it is unclear whether Zhang admitted as a matter of law that she participated in the drafting of her accountant's report. Notably, however, when asked at trial about the authorship of the report Mr. Wei confirmed that it was drafted "in consultation with [Zhang's] attorney[.]" N.T., 02/13/2017, at 139.

On March 21, 2016, Zhang filed an amended complaint, alleging three counts of breach of contract, one count of fraud, and one count seeking a declaratory judgment that Zhang is the majority shareholder of Icy Snow.

[Zhang also] filed a petition for emergency relief on March 21, 2016[,] seeking access to the business bank account, access to the business records, and an order directing [Chen] to file any and all past tax returns. On August 7, 2016, [Zhang] arrived at Icy Snow on a day [Chen] was managing the business. [Zhang] prevented [Chen] from operating the business by removing the computer cables necessary for the karaoke systems and by telling customers the business was closed. [Zhang] also attempted to access the business later in the day after leaving and being told not to return by [Chen].

[Zhang] accessed the business bank accounts and transferred substantially all of the money from the business account into a money market account without consulting [Chen]. Both [the business bank account and money market account] were in Icy Snow's name. [Chen] discovered the transfer, closed the money market account and transferred the money back. On August 8, 2016, [Chen] filed a petition for preliminary injunction seeking return of the computer cables and an injunction preventing [Zhang] from taking any actions detrimental to the business. The [trial court] entered an order on August 8, 2016[,] granting [Chen's] preliminary injunction, ordering [Zhang] to return the computer cables within 24 hours, and prohibiting her from taking any actions detrimental to the business.

In September 2016, [Chen] ceased splitting managerial duties with [Zhang], changed the locks on the business, and prevented [Zhang] from accessing the property. [Chen] feared [Zhang] would attempt to ruin the business or interfere in some manner. On November 3, 2016, [Zhang] withdrew $265,000.00 from the business bank account. That money has since been returned. On November 11, 2016[,] [Zhang] attempted to access the business by hiring a locksmith who ultimately refused to open the lock after [Chen] arrived. [Zhang] then broke a key off in the door rendering it inoperable and preventing [Chen] from opening and operating the business. On November 12, 2016, [Zhang] forcibly entered the building and barred the doors, preventing [Chen] from

accessing the building and operating the business. [Chen was able to regain access to the building and] has been the sole manager of Icy Snow since [the November 2016 events occurred].

Trial Court Opinion, 11/13/2017, at 4-5 (formatting altered).

On November 15, 2016, Chen filed a petition for contempt of court based on Zhang's disregard of the preliminary injunction entered against her. He then amended his contempt petition. Zhang filed a response to Chen's amended petition, as well as her own petition for contempt/emergency relief. On February 8, 2017, Zhang filed a petition to dissolve the business. Chen filed a motion to strike the petition to dissolve. The trial court deferred ruling on the contempt petitions as well as the motion to strike. The court conducted a non-jury trial on February 13, 2017, March 4, 2017, and April 28, 2017. On November 13, 2017, the trial court issued a verdict, opinion, and order. The trial court found that the capital contributions to the business totaled $345,081.54. In addition, the trial court found that Zhang contributed $141,554.24 or 41.02%[2] and Chen contributed $203,527.30, or 58.98%.[3] The order stated the following.

1. Count I: Breach of Contract in favor of [Zhang]. [Chen] must compensate [Zhang] the sum of $3,021.90.

---

[2] "This includes the $20,000.00 that [Zhang] loaned the business, of which $15,000.00 was repaid and $5,000.00 was converted into capital contribution, and $10,000.00 paid directly to [Chen] for business expenses." Trial Court Opinion, 11/13/2017, at 2-3.

[3] "This amount represents the total payments by [Chen], minus the amount [Zhang] paid and loaned directly to [Chen] for business expenses." Trial Court Opinion, 11/13/2017, at 3.

2. Count II: Breach of Contract in favor of [Chen].

3. Count III: Breach of Contract in favor of [Chen].

4. Count IV: Declaratory Judgment Action is DENIED.

5. Count V: Fraud in favor of [Chen].

6. [Zhang's] Petition to Dissolve Icy Snow is GRANTED.

7. [Zhang's] Petition for Right to Manage Icy Snow is DENIED.

8. [Chen's] Amended Petition for Contempt is GRANTED. No sanctions shall be imposed at this time.

9. [Zhang's] Petition for Contempt/Special Emergency Relief is DENIED.

10. [Chen's] counterclaim seeking Declaratory Judgment is DENIED[.]

11. [Zhang] is enjoined from entering the business or interfering with business operations during Dissolution.

Trial Court Order, 11/13/2017.

Both parties filed post-trial motions, which the trial court denied by opinion and order dated March 22, 2018. Thereafter, each party filed a notice of appeal. The trial court and both parties complied with Pa.R.A.P. 1925. This Court, *sua sponte*, consolidated the appeals on June 4, 2018.

Zhang raises the following issues on appeal.

I.  Whether or not the [trial] court erred in [finding Zhang was only entitled to damages in the amount of] $3,021.90[, on Count I, breach of contract]?

II.  Whether or not the [trial] court erred by finding in favor of [Chen] for Count II, breach of contract?

III.    Whether or not the [trial] court erred by finding in favor of [Chen] on Count III, breach of contract?

IV.    Whether or not the [trial] court erred by refusing to issue a declaratory judgment finding that [Zhang] was the majority owner of [Icy Snow,] which would allow her to manage the company?

V.    Whether or not the [trial] court erred by finding in favor of [Chen] on Count V, fraud?

VI.    Whether or not the [trial] court erred by dismissing [Zhang's] [p]etition for [r]ight to [m]anage [Icy Snow]?

Zhang's Brief at 4-5.

Chen raises the following issue.

Whether [the] trial court erroneously granted dissolution of a corporation, by mistakenly analyzing the matter under the law regarding partnerships, which has a lower burden of dissolution than the law regarding corporations, when [Zhang] filed a "petition to dissolve" just one business day before trial, and when the trial court and parties otherwise analyzed the case by reference to a pleading that preceded Appellant's petition to dissolve[?]

Chen's Brief at 2-3.

We address Zhang's allegations of error with the following standard of review in mind.

It is well-settled [that] [o]ur appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.

*Stephan v. Waldron Elec. Heating and Cooling LLC*, 100 A.3d 660, 664-665 (Pa. Super. 2014) (citation omitted).

In her first allegation of error, Zhang alleges that the trial court erred in awarding only $3,021.90 in damages on count one, breach of contract. "It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). It is undisputed that the Agreement is a contract. Zhang's claim of breach is based on the provision of the Agreement that states the parties will share profits according to the proportion of their respective capital contributions. She argued at trial, and now argues on appeal, that she actually contributed 51.94% of the initial capital contributions and, therefore, she should have received 51.94% of the profits. During the period of time in which Chen managed the business solely, from May 2013 to August 30, 2014, Zhang received 40% of the profits. The trial court found that Zhang actually contributed 41.02% of the capital. Therefore, it awarded damages in the amount equal to the 1.02% difference between what Zhang was owed and what she received. We find that the trial court's determination of ownership interests in the business is supported by competent evidence.

Zhang and Chen's experts generally agreed on the amount of Chen's claimed contributions (around $202,000.00).[4]  ***See*** N.T., 02/13/2017, at 129 (Mr. Wei testified, "on this number we agree.  Me and Mr. Chen's accountant agree.")  However, Zhang's expert significantly reduced Chen's claimed contributions, based on allegations that the costs were "labor costs to hire alien workers who did not have legal authorization to work in U.S." and service contributions with "no verified documentation."  Zhang's Accountant Report, 8/18/15, at 1.  Zhang did not introduce any evidence regarding the immigration status of any workers or any evidence that would indicate the payments Chen recorded did not take place.  Zhang argues, "the more credible testimony was from Mr. Wei[.]"  Zhang's Brief at 23.  The trial court did not find Mr. Wei's testimony regarding the reductions in Chen's contributions to be credible.  Instead, the court found that Chen's claimed contributions were valid.  We find no error in this determination.  The court's determination of ownership interests was supported by competent evidence; therefore, the award of $3,021.90 was appropriate.[5]

---

[4] The experts disagreed about which party should be credited with capital loaned by Zhang to Chen and the business.

[5] In her brief, Zhang avers that she is also entitled to a greater percentage of the profits from the period between August 30, 2014, and September 2016, when the parties alternated management days.  Zhang contends that during that time, "she should have r[u]n the business six days, not four days." Zhang's Brief at 26.  Zhang's contention is based on her mistaken belief that

- 10 -

Zhang's second allegation of error relates to her second breach of contract claim. Zhang alleged that Chen improperly paid friends and relatives who did not work for Icy Snow and underreported his managerial salary. Zhang argues that these payments were a breach of the fiduciary duty created by the Agreement. The trial court found, "there was not enough evidence presented to support a breach of fiduciary duty and this breach of contract claim." Trial Court Opinion, 11/13/17, at 9. Zhang did not introduce any evidence regarding this claim. The trial court's decision in favor of Chen on this count is supported by competent evidence, or more specifically, the lack thereof.

In her next issue, Zhang contends that the trial court erred by finding for Chen on count three. Zhang argues that Chen made purchases on a business debit card and then reimbursed himself in cash. Again, Zhang argues this was a breach of the fiduciary duty Chen owed to her based on their partnership. Zhang, however, introduced no evidence of a business debt card or of Chen's alleged reimbursements. Again, the trial court's decision on this count is supported by the record.

Next, Zhang argues that the trial court erred in denying her request for a declaratory judgment naming her the majority owner of the business. As discussed above, we conclude that the trial court's determination of ownership

---

she is entitled to 51.94% of the profits, but we need not address this claim at length because it is waived for lack of development. *See McEwing v. Lititz Mut. Ins. Co.*, 77 A.3d 639, at n. 6 (Pa. Super. 2013).

interests in the business was supported by competent evidence. Therefore, Zhang is not entitled to relief on this count because, among other reasons, she is not the majority owner of the business.

Likewise, we find no merit to Zhang's argument that the trial court erred by finding for Chen on Zhang's fraud claim.

> In order to prove fraud[,] the following elements must be shown: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Milliken v. Jacono*, 60 A.3d 133, 140 (Pa. Super. 2012). Zhang does not specify any false representations made to her by Chen. Instead, she simply repeats her allegations that Chen hired illegal workers and made unauthorized payments to feed and house said workers. We agree with the trial court that, "[t]here was no evidence presented that would support finding [Chen's] representations false or that [Chen] had knowledge of the falsity of those statements. [Chen] presented evidence that he ran the business effectively and paid employees properly and did not make improper payments to relatives." Trial Court Opinion, 11/13/2017, at 12. Zhang is not entitled to relief on this issue.

Regarding Zhang's final issue, the trial court did not err by dismissing Zhang's petition for the right to manage Icy Snow. The Agreement provides that Chen will be the primary manager of the business. Zhang essentially

asked the trial court to reform the Agreement by declaratory judgment and install her as the sole manager of the business. The trial court does not have that authority. **See New London Oil Co., Inc. v. Ziegler**, 485 A.2d 1131, 1133 (Pa. Super. 1984) ("courts are not authorized to reform instruments within the framework of a declaratory judgment action.")

Turning to Chen's lone issue, he argues that the trial court improperly granted Zhang's petition to dissolve the business. Chen argues that the petition should not have been considered because it was not a proper pleading and, even if it were, it was not filed with "consent of the adverse party or by leave of court." Pa.R.C.P. 1033. This argument is unavailing. It appears that the trial court treated the petition to dissolve as a motion to amend the amended complaint. A decision to grant or deny a motion to amend a complaint is within the sound discretion of the trial court, and will not be disturbed absent an abuse of discretion. **TCBF Ltd. Partnership v. Skatell**, 976 A.2d 571, 574 (Pa. Super. 2009). As the trial court explained, pursuant to Pa.R.C.P. 126, "[t]he [c]ourt is permitted to liberally apply the rules in order to ensure a just, speedy, and inexpensive determination." Trial Court Opinion, 3/22/2018, at 3. As the trial court noted, it "understood the [p]etition to [d]issolve to be requesting dissolution as relief, not as a new claim. As such, the [p]etition to [d]issolve supplemented the [a]mended [c]omplaint, did not add any claims, and merely asserted new equitable relief that was proper based on the amended complaint." Trial Court Opinion, 3/22/2018, at 3. The

trial court did not abuse its discretion in permitting the request for dissolution to be presented.

Chen next argues that even if the petition were seeking an amendment of the amended complaint, it was nonetheless inappropriate because it prejudiced him. The amendment of a pleading may not be granted if it would cause prejudice or surprise to the adverse party. *Hill v. Ofalt*, 85 A.3d 540, 557 (Pa. Super. 2014). In this case, Zhang filed the amendment within one week of the first day of trial. Chen argues that he "had no reasonable means of responding to a new pleading just days before trial … and then preparing a defense to that amendment on short notice." Chen's Brief at 30. It may be true that Chen received the amendment shortly before the first day of trial. However, there were 74 days between the first and last days of trial in this case. Moreover, Chen claims he was prejudiced by the "short notice" but he has not demonstrated any such prejudice. Chen does not point to any evidence he might have offered to defend against dissolution had he been given more notice. Thus, this argument fails.

Finally, Chen argues that the trial court erred in applying the Uniform Partnership Act ("UPA")[6] in ordering dissolution of the business, rather than the Business Corporation Law ("BCL").[7] The trial court granted dissolution based on 15 Pa.C.S.A. § 8481(a)(4)(iv), on the grounds that it is "not

---

[6] 15 Pa.C.S.A. §§ 8411-8486.

[7] 15 Pa.C.S.A. §§ 1101-4162.

- 14 -

reasonably practicable to carry on the partnership business in conformity with the partnership agreement." Chen contends that the parties formed a corporation and it was error to consider dissolution under the UPA instead of the BCL.

The parties technically formed a corporation on December 22, 2011 by filing articles of incorporation with the Secretary of State. However, they did not at any point exercise corporate formalities in operating the business. The parties signed the Agreement, which purported to be a partnership agreement, following the incorporation of the business. The pleadings and the trial evidence were geared toward determining the parties' respective contributions to the business, which is a hallmark of partnership disputes. The Agreement governed the business relationship between the parties. Thus, although steps were taken initially to make Icy Snow a Pennsylvania corporation, the parties at all times treated the business as a partnership. Accordingly, we find no error by the trial court in applying partnership law.

Ample evidence established that this business relationship is no longer practical. It is clear, based on each party's attempts to bar the other from the business, the unconventional access to business records and equipment, and the current injunction barring Zhang from entering the business, that the parties cannot carry on the business in conformity with the Agreement.

Thus, we agree with the trial court that the business relationship between Zhang and Chen, as set forth in the Agreement, must be dissolved.[8] However, based on the contentious relationship between the parties, and the fact that Zhang is currently enjoined from entering the business property, it was error for the trial court to order dissolution without providing any instruction for winding up the business. The Agreement does not provide directives for the dissolution of the business, therefore the relevant provisions of the UPA control. *Canter's Pharmacy, Inc. v. Elizabeth Associates*, 578 A.2d 1326, 1329 (Pa. Super. 1990). Section 8482(e) of the UPA provides that upon application of a partner,[9] the court may order supervision of the winding up, "including the appointment of a person to wind up the partnership's business." 15 Pa. C.S.A. § 8482(e). Thus, we remand with instructions for the trial court to reconvene the parties and assess the need for judicial oversight in winding up the business and dividing assets in accordance with the ownership interests determined at trial and discussed herein.

_____

[8] The corporate entity, Icy Snow KTV, Inc., will remain in existence.

[9] Zhang petitioned for dissolution of the business, but did not request that the court appoint a receiver to oversee the division of profits and other assets. Instead, Zhang requested that she be installed as the sole manager of Icy Snow throughout the dissolution. As previously noted, the trial court was correct to deny Zhang such relief. However, by granting dissolution and barring Zhang from the business, the trial court, in effect, granted Chen total control over the winding up and distribution of assets. This was improper.

Judgment affirmed.  Case remanded for proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/26/2019